UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LISA ANN GALLOW,

       Plaintiff,

v.                   5:15-CV-1017
                     (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____

APPEARANCES:            OF COUNSEL:

OLINSKY LAW GROUP        HOWARD D. OLINSKY, ESQ.
 Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.     FERGUS J. KAISER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

   This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 13.) This case has proceeded in accordance with General Order 18.

   Currently before the Court, in this Social Security action filed by Lisa Ann Gallow ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 11, 12.) For the reasons set forth below, it is recommended that Plaintiff's motion be granted and Defendant's motion is denied.

I.  **RELEVANT BACKGROUND**

   A.  **Factual Background**

Plaintiff was born on December 22, 1967. (T. 99.) She completed high school. (T. 119.) Generally, Plaintiff's alleged disability consists of left rotator cuff tear, left carpal tunnel, and bulging discs at C5-6. (T. 118.) Her alleged disability onset date is August 5, 2011. (T. 99.) Her date last insured is December 31, 2016. (T. 52.) She previously worked as a postal carrier and daycare provider. (T. 119.)

   B.  **Procedural History**

On May 2, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 53.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 22, 2013, Plaintiff appeared before the ALJ, Marie Greener. (T. 23-48.) On March 17, 2014, ALJ Greener issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 9-22.) On June 22, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.  **The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 14-19.) First, the ALJ found that Plaintiff met the insured status

requirements through December 31, 2016 and Plaintiff had not engaged in substantial gainful activity since August 5, 2011.  (T. 14.)  Second, the ALJ found that Plaintiff had the severe impairments of obesity, bilateral rotator cuff partial tear, bilateral moderate carpal tunnel syndrome, and degenerative disc disease of the cervical spine.  (*Id.*)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 15.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of sedentary work.  (*Id.*)[1]  Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 18-19.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the RFC determination was not supported by substantial evidence because the ALJ failed to include Plaintiff's manipulative limitations.  (Dkt. No. 11 at 8-15 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ's credibility determination was not supported by substantial evidence.  (*Id.* at 15-18.)  Third, and lastly, Plaintiff argues the ALJ's step five determination was not supported by substantial evidence because the ALJ failed to obtain vocational expert ("VE") testimony.  (*Id.* at 18-19.)

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. § 404.1567(a).

3

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ properly evaluated the medical opinion evidence. (Dkt. No. 12 at 6-9 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly assessed Plaintiff's credibility. (*Id.* at 9-11.) Third, and lastly, Defendant argues that the ALJ's step five determination was supported by substantial evidence. (*Id.* at 11.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and

(5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. The ALJ's RFC Determination

Plaintiff's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545. The RFC is based on all the relevant medical and other evidence of record, and takes into consideration the limiting effects of all of Plaintiff's impairments. *Id*.

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. § 404.1545; *see Martone v. Apfel,* 70 F.Supp.2d 145, 150 (N.D.N.Y.1999).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2)(i)-(iv). The ALJ is required to set forth her reasons for the weight she assigns to the treating physician's opinion. *Id.*, *see also* SSR

6

96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff essentially argues that the ALJ erred in his RFC determination because the ALJ erroneously afforded little weight to the opinion of Plaintiff's treating physician, Stephanie Roach, M.D., that Plaintiff had manipulative limitations. (Dkt. No. 11 at 8 [Pl.'s Mem. of Law].)

Dr. Roach treated Plaintiff for her bilateral shoulder pain and bilateral Carpal Tunnel Syndrome. On September 11, 2013, Dr. Roach stated that Plaintiff's hands and arms "get weak with any kind of lifting or carrying" and she "cannot carry [any more] than 5 pounds with either hand or she may drop something." (T. 252.) She further stated that Plaintiff should not perform overhead activities, should not lift over five pounds with either arm, and should not perform repetitive work. (*Id.*) She stated "[P]laintiff can use these limitations then to perhaps consider some retraining once she has gotten her social security disability." (*Id.*)

On November 6, 2013, Dr. Roach completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" form. (T. 260-265.) Dr. Roach opined that Plaintiff could "never" lift and/or carry up to ten pounds. (T. 260.) She opined that Plaintiff could sit, stand, and walk for four hours at a time and for eight hours total in a workday. (T. 261.)

Dr. Roach provided specific limitations for Plaintiff's use of her upper extremities. Dr. Roach opined that Plaintiff could occasionally reach overheard and in all other directions with both hands. (T. 262.) She opined that Plaintiff could never handle, finger, feel, or push/pull with either hand. (*Id.*) She opined that Plaintiff could not climb

7

ladders or scaffolds because she could not use her arms to support herself. (T. 263.) Dr. Roach opined that Plaintiff could occasionally: climb stairs and ramps; balance; stoop; kneel; crouch; and crawl. (*Id.*)

Dr. Roach opined that Plaintiff had environmental limitations. She opined that Plaintiff should never work from unprotected heights; could occasionally work with moving mechanical parts; and she could operate a motor vehicle up to twenty minutes. (T. 264.)

Other medical sources provided functional limitations. On June 17, 2013, Jalal Sadrieh, M.D. performed an independent medical examination and reviewed Plaintiff's record. (T. 254-259.) On examination Dr. Sadrieh observed that Plaintiff had "some tenderness" in the trapezius area, forward flexion of the cervical spine to 20 degrees, active extension of the cervical spine to 20 degrees, no pain or discomfort in the lumber spine or lower extremities. (T. 256.) Dr. Sadrieh noted that Plaintiff had "generalized shoulder tenderness." (*Id.*) Plaintiff's right shoulder had a forward elevation to 135 degrees and her left shoulder had forward elevation to 150 degrees. (*Id.*) He observed full range of motion of the small joints of the hands and grip strength of 8kg in both hands. (*Id.*)

Dr. Sadrieh provided a narrative in response to "specific question requested." (T. 258.) He stated that Plaintiff did not need further diagnostic testing, did not need further physical therapy, was not a candidate for further surgery, but should follow up with her orthopedic surgeon until the one year anniversary of her surgery. (*Id.*) Regarding Plaintiff's ability to work, Dr. Sadrieh opined that Plaintiff could return to "light-duty" work

8

if she avoided any lifting at or above shoulder level. (*Id.*) Dr. Sadrieh did not provide a definition of "light-duty."

On July 26, 2012, Elke Lorensen, M.D. performed a consultative examination. (T. 236-239.) Dr. Lorensen noted that Plaintiff had recently undergone right shoulder surgery in June of 2012. (T. 236.) Dr. Lorensen performed a physical examination which indicated Plaintiff had a normal gait, could walk on heels and toes, could fully squat, had a normal stance, and needed no help changing for the exam or getting on and off the exam table. (T. 237.) Dr. Lorensen observed that Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (T. 238.) Dr. Lorensen noted that Plaintiff's lumbar spine had flexion to 70 degrees, full extension, full lateral flexion bilaterally, and full rotary movement bilaterally. (*Id.*)

Dr. Lorensen examined Plaintiff's shoulders. She observed that Plaintiff had full range of motion in her left shoulder, elbow, forearm, and wrist. (T. 238.) She observed that Plaintiff held her right arm close to her body and stated she was unable to move it; however, Dr. Lorensen noted that Plaintiff was able to dress and undress. (*Id.*) Dr. Lorensen stated that Plaintiff had "very limited" range of motion on her right side. (*Id.*) Plaintiff had full range of motion in her hips and lower extremities. (*Id.*)

In a medical source statement, Dr. Lorensen opined that Plaintiff had "marked restrictions for reaching, pushing, and pulling with the right arm." (T. 239.) She opined that Plaintiff had "mild restrictions for bending and lifting" and "mild restrictions for handling objects with the right hand." (*Id.*)

9

On December 4, 2012, non-examining State agency medical consultant, Myron Watkins, M.D. reviewed Plaintiff's record from November 2011 through March of 2012 and Dr. Lorensen's examination. (T. 246-247.) Dr. Watkins stated that the evidence affirmed "moderate physical limitations;" however, Plaintiff had a normal gait, equal deep tendon reflexes in upper and lower extremities, no muscle atrophy, 5/5 strength in upper and lower extremities, and full range of motion of left upper extremity, hips, knees, and ankles bilaterally. (T. 247.) Dr. Watkins noted "RFC limitations supported." (*Id.*) It is not clear from Dr. Watkins notations what RFC he was referring to; however, the only RFC in the record at the time was a physical RFC assessment completed by a single decision maker on July 31, 2012. (T. 54-59.) The single decision maker opined that Plaintiff had the RFC to perform a limited range of light work. (T. 55-56.) The single decision maker stated Plaintiff should never climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs. (T. 56.) The single decision maker also stated Plaintiff could occasionally: balance, stoop, kneel, crouch and crawl. (*Id.*)

In assessing the medical evidence in the record, the ALJ afforded Dr. Roach's opinion "little evidentiary" weight. (T. 17.) The ALJ reasoned that Dr. Roach's opinion "contrast[ed] sharply" with other evidence in the record, specifically her own treatment notations that Plaintiff could shop, climb stairs and sort, handle, and use paper files. (*Id.*) The ALJ also reasoned that Dr. Roach's opinion was without substantial support from other evidence in the record which showed "symmetric grip strength of 8kg" and that surgeries were "successful." (*Id.*) The ALJ reasoned that Dr. Roach's limitations were inconsistent with her September 22, 2013 statement that Plaintiff should "consider some retraining." (*Id.*) Lastly, the ALJ reasoned that Dr. Roach's statements were

"somewhat" inconsistent with Plaintiff's own reports. (*Id.*) The ALJ provided the opinions of Drs. Lorensen, Sadrieh, and Watkins "partial evidentiary weight." (T. 18.)

The ALJ's reasoning for the weight afforded to Dr. Roach's opinion was flawed. First, the ALJ misread the evidence in her evaluation of Dr. Roach's opinion. Dr. Roach did not opine, as the ALJ stated, that Plaintiff "could not lift and/or carry any weight at all." (T. 17.) Dr. Roach stated that Plaintiff's hands and arms got "weak" with any type of lifting or carrying. (T. 252.) However, she did not opine that Plaintiff was incapable of lifting or carrying. Dr. Roach opined on September 11, 2013, that Plaintiff could not lift more than five pounds and she opined on November 6, 2013 that Plaintiff could "never" lift up to ten pounds. (T. 252, 260.) Second, these opinions are not inconsistent with each other. An inability to lift more than five pounds equates to never being able to lift *up to* ten pounds. The ALJ's reason, which relies on a selective reading of the record, is not a "good reason" for discrediting Dr. Roach's opinion regarding Plaintiff's ability to lift and carry. *Miller v. Colvin*, 122 F. Supp. 3d 23, 30 (W.D.N.Y. 2015); *see Tim v. Colvin,* No. 6:12-CV-1761, 2014 WL 838080, at *8 (N.D.N.Y. Mar. 4, 2014).

The ALJ took Dr. Roach's statement that Plaintiff should "consider some retraining" as an indication that Dr. Roach believed Plaintiff could work and was therefore not disabled. (T. 17.) The ALJ read Dr. Roach's statement out of context. Dr. Roach stated Plaintiff could "use these limitations then to perhaps consider some retraining." (T. 252.) Dr. Roach was referring to the limitations of no overhead activities, no lifting over five pounds with either arm, and no repetitive work. (*Id.*) This does not equate to a finding of not disabled nor does it disqualify Dr. Roach's statements regarding Plaintiff's limitations.

The ALJ also erred in concluding that Dr. Roach's non-exertional limitations were inconsistent with her opinion that Plaintiff could perform certain activities. (T. 17.) To be sure, Dr. Roach indicated that Plaintiff could shop; climb steps with a single hand rail; and sort, handle, and use paper/files. (T. 265.) However, the ALJ provided no support for her determination that these activities were inconsistent with Dr. Roach's opinion that Plaintiff could occasionally climb stairs and could never handle, finger, or feel, push or pull on a sustained basis. (T. 262, 265.)

The ALJ's RFC determination, that Plaintiff had no manipulative limitations, was also not supported by substantial evidence. First, the ALJ's RFC determination failed to provide for Plaintiff's apparent limited ability to reach. Dr. Roach, Dr. Sadrieh, and Dr. Lorensen provided reaching limitations; however, the ALJ failed to address these limitations in her RFC analysis. To be sure, an ALJ is not required to perform a function by function analysis; however, "[r]emand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). Here, despite medical evidence reflecting reaching limitations, the ALJ failed to discuss these limitations and therefore prevented meaningful review. Every examining medical source in the record provided some degree of limitation in Plaintiff's ability to reach, yet the ALJ provided no discuss of this limitation nor did the ALJ provide for this limitation in her RFC determination.

Second, the ALJ failed to provide "good reason" for rejecting Dr. Roach's manipulative limitations because the ALJ impermissibly substituted her own lay opinion

12

for that of medical evidence. The ALJ dismissed Dr. Roach's manipulative limitations because Dr. Sadrieh stated Plaintiff's grip strength was 8kg bilaterally using a Jamar grip dynamometer. (T. 17.) Dr. Sadrieh did not provide a statement quantifying Plaintiff's grip strength findings. The ALJ concluded, based on her own lay interpretation of Plaintiff's grip strength of 8kg, that Plaintiff did not have manipulative limitations. Here, the ALJ improperly substituted her own judgment for that of a medical opinion. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998); *Smith v. Colvin*, No. 13-CV-4084, 2014 WL 4185433, at *2 (D. Kan. Aug. 22, 2014) (ALJ improperly substituted own opinion where a doctor's report indicated plaintiff's grip strength was twenty pounds on the Jamar test, but notations failed to describe where this result feel within the testing standards, without this information the ALJ reached a conclusion about grip limitations without medical evidence to support it). Such error was not harmless, because most unskilled sedentary jobs require good use of both hands and the fingers and require good use of the hands and fingers for repetitive hand-finger actions. SSR 96-9p, 1996 WL 374185, at *8.

      To be sure, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949

F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review). Here, the weight of the evidence appears to indicate Plaintiff had greater limitations in her ability to lift, carry, reach, and perform manipulative functions than the ALJ's RFC determination. However, it is the function of the ALJ, not the reviewing courts to resolve evidentiary conflicts. *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982). Because the ALJ failed to provide "good reason" for weighing the opinion evidence of Dr. Roach, remand is recommended.

This Court cannot determine whether substantial evidence supported the ALJ's RFC determination, because there is a "reasonable basis for doubt" as to whether correct legal principles were applied; therefore, the substantial evidence standard may not be used to uphold the ALJ's decision. *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 280 (N.D.N.Y. 2009) (*citing Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987)). Overall, the ALJ's reasoning for discounting Dr. Roach's opinion was based on a misreading of the evidence and an improper substitution of her own lay opinion for medical evidence. Therefore, remand is recommended for a proper evaluation of Dr. Roach's opinion and subsequent RFC determination based on that evaluation.

### B.     The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's]

14

subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. § 404.1529; SSR 96–7p. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); SSR 96–7p. Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii); SSR 96-7p.

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible "for the reasons explained in this decision." (T. 16.) The ALJ also stated that Plaintiff's reported limited activities of daily living were outweighed by "other factors discussed in this decision." (*Id.*) In making her credibility determination the ALJ discussed Plaintiff's testimony, her activities of daily living, the objective medical evidence in the record. (T. 15-16.)

Plaintiff argues the ALJ erred in her credibility determination because she failed to properly evaluate Plaintiff's activities of daily living and further, it was unclear from the ALJ's decision what "other factors" she relied on. (Dkt. No. 11 at 15-18 [Pl.'s Mem. of Law].)

As remand is recommended for a proper evaluation of Dr. Roach's opinion and subsequent RFC determination, remand is also recommended for a new credibility analysis in light of that evaluation.

### C.    The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404,

Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

The ALJ determined at step five that there were a significant amount of jobs in the national economy that Plaintiff could perform based on her age, education, past work experience and RFC. (T. 18.) Because remand is recommended for a proper evaluation of Dr. Roach's opinion and RFC analysis, remand is also recommended for a subsequent step five analysis. Further, given Plaintiff's apparent multiple non-exertional limitations and additional limitations in lifting and carrying, testimony of a VE may be proper.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings be **GRANTED**, and the Commissioner's determination be **DENIED**, and the matter be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report**.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 13, 2016

_____
William B. Mitchell Carter
U.S. Magistrate Judge

17